IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

---

Leatha Hargrow, Individually and )
on behalf of the wrongful death )
beneficiaries of Kendrick Holmes, )
Deceased, )
 )
    Plaintiff, )
v. ) No. 13-2770
 )
Shelby County, Tennessee; Shelby )
County Sheriff's Department; and )
Correct Care Solutions, LLC, )
 )
    Defendants. )

---

**ORDER GRANTING IN PART AND DENYING IN PART CORRECT CARE SOLUTIONS, LLC'S MOTION TO DISMISS**

---

On October 3, 2013, Plaintiff Leatha Hargrow ("Hargrow") filed a Complaint against Defendants Shelby County, Tennessee ("Shelby County"), Shelby County Sheriff's Department,[1] and Correct Care Solutions, LLC ("CCS"). (Compl., ECF No. 1.) Hargrow is the mother of Kendrick Holmes, who died on October 3, 2012, while in custody at the Shelby County Criminal Justice Center in Memphis, Tennessee. (Id. at ¶ 20.) Defendant CCS is a limited liability company which staffs the medical department of the Shelby County Criminal Justice Center. (Id. at ¶¶ 4,

---

[1] Shelby County Sheriff's Department is not a legal entity seperate from Shelby County, Tennessee. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that a police department is not a separate legal "entity which may be sued.").

13.) Hargrow brings suit individually and on behalf of the beneficiaries of her deceased son Kendrick Holmes ("Holmes"), for deprivation of Constitutional rights under 42 U.S.C. § 1983, medical malpractice under Tenn. Code Ann. §§ 29-26-115, et seq., and wrongful death under Tenn. Code Ann. § 20-5-113. (Id. ¶¶ 21-42.)

Before the Court is CCS's October 29, 2013 Motion to Dismiss (the "Motion"). (Mot., ECF No. 12.) Hargrow responded on November 26, 2013. (Resp., ECF No. 19.) CCS replied on December 10, 2013. (Reply, ECF No. 24.) For the following reasons, CCS's Motion is GRANTED IN PART and DENIED IN PART.

**I. Background**

Around September 8, 2012, Holmes was arrested on charges of possessing a controlled substance and drug paraphernalia. (Id. at ¶ 11.) Holmes was incarcerated at the Shelby County Criminal Justice Center (the "Jail"), where he remained until his death on October 3, 2012. (Id. at ¶ 12.) On September 12, 2012, Holmes visited the Jail's medical department, which was staffed by CCS. (Id. at ¶ 13.) Holmes purportedly complained of neck pain that had begun two weeks earlier, and a test revealed that he had high blood pressure. (Id.) CCS staff gave Holmes aspirin and anti-hypertensive medication. (Id. at ¶ 14.) The staff told Holmes to return to the medical department in two weeks. (Id.)

Holmes returned on September 26, 2013, complaining that blood was flowing from his ear and that he was unable to breathe through his nose. (Id. at ¶ 15.) CCS staff diagnosed Holmes with sinusitis and he was returned to his pod. (Id.) On October 3, 2012, around 2:30 A.M., Holmes allegedly began vomiting continuously for several hours. (Id. at ¶ 16.) According to the Complaint, CCS and Jail records do not indicate whether any CCS or Jail staff evaluated Holmes' symptoms from 2:30 A.M. until a sick call was placed at 6:28 A.M. (Id.) At 7:02 A.M., Holmes, unable to walk, was transported by wheelchair to the medical department and seen at 8:14 A.M. (Id. at ¶ 17.)

Holmes was sweating profusely when he arrived at the medical department, and reported vomiting, blurred vision, dizziness, lightheadedness, and sharp upper-abdomen pain. (Id. at ¶ 18.) Instead of being sent to the emergency room, Holmes was returned to his pod at 10:00 A.M. (Id.) At about 11:00 A.M., Holmes was found unresponsive in his cell, and a Shelby County Sheriff's employee activated the Mandown Unit. (Id. at ¶ 19.) At 11:45 A.M., Holmes was transported to the Regional Medical Center emergency room, where he was pronounced dead on arrival. (Id. at ¶ 20.)

## II. Jurisdiction

The Court has federal question jurisdiction over Hargrow's § 1983 claims under 28 U.S.C. § 1331. See 28 U.S.C. § 1331.

The Court has supplemental jurisdiction over the remaining claims because they derive from a "common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

**III. Standard of Review**

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S.

4

at 555). "[D]etailed factual allegations" are not required, but Rule 8 does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 544).

A complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

**IV. Analysis**

CCS asserts that: (1) the Complaint fails to allege a sufficient factual basis to find that CCS violated Holmes' Constitutional rights; (2) Hargrow failed to comply with the notice provisions of Tenn. Code Ann. § 29-26-121 for medical malpractice suits; (3) Hargrow's malpractice claims are now time-barred for notice noncompliance; (4) a claim for medical malpractice cannot be maintained against a corporation; (5) the Complaint fails to state a wrongful death claim; and (6)

5

Hargrow's requests for pre-judgment interest and punitive damages should be stricken from the Complaint. (Memo. Mot. Dismiss, ECF No. 12-1.)

### A. Inadequate Medical Care under § 1983

Hargrow alleges that CCS, acting under the color of state law, violated Holmes' right to substantive due process by its deliberate indifference to Holmes' severe medical condition, which caused him to die. (Compl. ¶ 23.) CCS argues that Hargrow has failed to allege adequately that CCS acted with deliberate indifference to Holmes' medical condition or that any deprivation arose from a CCS policy or custom. Hargrow argues that her pleadings are sufficient to survive a motion to dismiss because discovery is required to make more detailed allegations.

A typical claim under 42 U.S.C. § 1983 requires (1) deprivation of a federal right (2) by a person acting under color of state law. Black v. Barberton Citizens Hospital, 134 F.3d 1265, 1267 (6th Cir. 1998).

> A private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law.

Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993) (citing West v. Atkins, 487 U.S. 42, 54 (1988)). See also Ellison v. Garbarino, 48 F.3d 192, 195 (6th Cir. 1995).

A private company acting under the color of state law "cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." Street v. Corrections Corporation of America, 102 F.3d 810, 818 (6th Cir. 1996) (citing Monell v. Department of Social Serv., 436 U.S. 658 (1978)). Although Monell involved a municipal corporation, the Sixth Circuit has extended Monell's holding to private entities. See Id.

> Accordingly, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the [defendant company] acted under the color of state law, and (3) that the [company's] policy or custom caused that violation to happen.

Bright v. Gallia County, Ohio, 753 F.3d 639, 660 (6th Cir. 2014)(citing Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008)).

Pretrial detainees have a Fourteenth Amendment right to "adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)); Ford v. County of Grand Traverse, 535 F.3d 483, 495 (6th Cir. 2008) (holding that "[p]retrial detainees . . . are guaranteed the equivalent right to adequate medical treatment" as prisoners). See also Graham v. M.S. Connor et al., 490 U.S. 1865, 1870 n.6 (1989)

7

(explaining that Eight Amendment protection does not attach until after conviction and sentence). A claim alleging inadequate care must meets two requirements. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. (citing Wilson v. Seiter, 501 U.S. 294, 299 (1991) (stating that the wanton supply of insufficient medical needs may violate a prisoner's constitutional rights) (dicta)). The second requirement is that care providers act with "deliberate indifference" to a detainee's medical needs. See id. See also Jackson v. Wilkins, 517 Fed. App'x 311, 317 (2013) (holding that "deliberate indifference to serious medical needs" is a violation of a detainee's Fourteenth Amendment rights).

To allege deliberate indifference adequately, a plaintiff must state facts that show "defendants knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 603 (6th Cir. 2005) (citation omitted).

A plaintiff must plead that the constitutional violation resulted from a policy or custom by identifying:

> (1) The municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence to federal rights violations.

Spears v. Ruth, 589 F.3d 249, 256 (6th Cir. 2009). A mere conclusory allegation that a defendant employed an unlawful policy or custom, without identifying the policy or stating a pattern of conformance to that custom, is not sufficient. See Iqbal, 129 S. Ct. 1937, 1949 (2009); Huffer v. Bogen, 503 Fed. App'x 455, 462 (6th Cir. 2012) (dismissing a § 1983 claim against a county defendant when the complaint "failed to identify any policy or custom that resulted in a constitutional violation"); Broyles v. Correctional Medical Services, Inc., 2009 WL 3154241, at *2 (6th Cir. 2009) ("[B]are allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief."); accord Rowland v. City of Memphis, et al., 2013 WL 2147457, at *5 (W.D. Tenn., May 15, 2013)("[T]he three allegations in the Amended Complaint that refer to 'policies and procedures' are conclusory.")

To plead a policy of insufficient training adequately, the plaintiff must state facts showing that the entity knew yet ignored that its training was lacking. Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008). "The easiest way for an individual to meet her burden is to point to past incidents . . . that authorities ignored." Birgs v. City of Memphis, 686 F.Supp.2d 776, 780 (W.D. Tenn. 2010). "Only where a failure to train reflects a deliberate or conscious choice by a [company] —

9

a policy as defined by our prior cases — can a [company] be liable for such a failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

To plead adequately that a policy caused an injury, the complaint must plausibly allege that the identified policy "was the moving force behind the deprivation of the plaintiff's rights." Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012); accord Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997).

Although Hargrow has plausibly alleged that CCS deprived Holmes of his rights under the Constitution, she has not stated a claim that Holmes' injuries were caused by a policy or custom. The Complaint alleges facts that would have put CCS staff and physicians on notice of Holmes' objectively serious medical condition. Holmes reported increasingly alarming symptoms during three separate visits to CCS staff. (Compl. ¶¶ 13, 15, 18.) CCS staff could observe Holmes' profuse sweating, and was made aware of his neck pain, high blood pressure, blood flow from the ear, inability to breathe through the nose, blurred vision, dizziness, lightheadedness, and sharp upper-abdomen pain. (Id.) Holmes died within hours of reporting the last of those symptoms.

Hargrow also alleges specific facts supporting her claim that CCS acted with deliberate indifference to Holmes' serious

10

medical needs.  (See Compl. ¶ 23, 15-17.)  That CCS sent Holmes to his pod rather than providing him additional care hours before his death gives rise to a plausible claim of deliberate indifference.

Hargrow's § 1983 claim fails because she has not adequately alleged that a policy or custom caused Holmes' deprivation of rights.  Hargrow claims that "Defendants' current practices, policies, and procedures regarding the provision and monitoring of medical care to inmates . . . caused Kendrick Holmes to sustain serious injury and death."  (Compl. ¶ 25.)  Hargrow does not identify any enactment or specific CCS policy or custom of tolerance or acquiescence to federal rights violations.  See Spears, 589 F.3d at 256.  Her claim that CCS policies led to Holmes' deprivation of rights is entirely conclusory because she alleges no facts to support it.  See Broyles, 2009 WL 3154241 at *2.  Although she alleges that CCS failed to train its employees, she offers no facts to show that CCS knew yet ignored that its training was lacking.  See Carson, 540 F.3d at 457.  She points to no past incidents that authorities ignored.  See Birgs, 686 F.Supp.2d at 780.

Because she does not allege the existence of a policy or custom adequately, Hargrow's claims that a policy or custom caused Holmes' deprivation of rights are also conclusory. Without adequately pleading the existence of a policy or custom

that caused the deprivation of Holmes' constitutional rights, Hargrow fails to state a § 1983 claim for which relief can be granted. CCS's Motion to Dismiss Hargrow's § 1983 claims is GRANTED.

**B.    Notice under Tenn. Code Ann. § 29-26-121**

CCS urges dismissal of Hargrow's medical malpractice claim for failure to provide notice under the Tennessee Healthcare Liability Act, Tenn. Code Ann. § 29-26-121. CCS asserts that Hargrow did not include a certificate of mailing or a HIPAA-compliant medical authorization with the Complaint, as required by statute.

Under Tennessee law, a plaintiff asserting a claim for medical malpractice "shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before filing the complaint[.]" Tenn. Code Ann. § 29-26-121. If given by mail, notice "shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing." § 29-26-121(a)(4). A plaintiff must attach to the complaint "an affidavit of mailing supported by actual proof that notice was mailed." Shockley v. Mental Health Cooperative, Inc., 429 S.W.3d 582, 587 (Tenn. Ct. App. 2013). Although the postal service uses Form 3817 as its Certificate of Mailing, other forms that establish proof of mailing satisfy the statute.

12

See Duncan v. Med. Educ. Assistance, Corp., 2:12-CV-182, 2013 WL 1249574, at *9 (E.D. Tenn. Mar. 27, 2013) (holding that Form 3811, the "Domestic Return Receipt," is adequate proof of mailing).

Hargrow satisfied § 29-26-121(a)(4) by providing the Court actual proof of mailing. Hargrow attached a sworn affidavit to the Complaint attesting compliance with § 29-26-121(a). (Exhibit, ECF No. 1-5 at 1.) Hargrow attached Postal Service Forms 3877 and 3811 to support the affidavit. (Id. at 11, 12.) Both documents contain a stamped date of mailing and show that CCS was a recipient. (Id.) Hargrow has adequately established that CCS received notice of her medical malpractice complaint against it. See Myers v. AMISUB (SFH), Inc., 382 S.W.3d 300, 309 (Tenn. 2012).

CCS also asserts that Hargrow failed to provide a HIPAA-compliant medical authorization form with the Complaint. (Memo. Mot. Dismiss at 15.) Specifically, CCS contends that the notice is "blank as to who may use the release or who may release records regarding the subject patient." (Id.)

Under § 29-26-121(a)(2)(e), adequate notice must include a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." § 29-26-121(a)(2)(E). 45 C.F.R. § 164.508 governs the elements of a valid HIPAA

13

authorization form.  See C.F.R. § 164.508(c)(1).  Because minor deviations will not always defeat the purpose of the disclosure requirement stated in the statute, Tennessee courts require substantial rather than strict compliance with the HIPAA notice provision.  Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc., 418 S.W.3d 547, 555 (Tenn. 2013).

To determine substantial compliance, courts "consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." Id. at 556.  Defendants are clearly prejudiced when unable, due to a form procedural error, to obtain medical records needed for their legal defense.  Id.

Hargrow's HIPAA authorization form substantially complies with § 29-26-121(a)(2)(E).  The form fails to provide the name and address of the provider releasing the records and fails to provide contact information for the intended recipient. (Exhibit A, ECF. No. 1-5, at 7.)  HIPAA requires both.  45 C.F.R. § 164.508(c)(1)(ii)-(iii).  Nevertheless, those omissions did not prejudice CCS because CCS was the sole medical provider. (Compl. ¶ 13.)  The form complies with the other provisions of 45 C.F.R. § 164.508(c)(1). It provides a description of the information to be used, a general description of each purpose of the disclosed information, an expiration date, a signature, and the date.  (Id.)  Hargrow substantially complied with § 29-26-

14

121(a)(2)(E) because she provided CCS sufficient notice to obtain the medical records necessary for its defense. See Stevens ex rel, 418 S.W.3d at 555.

CCS's Motion to Dismiss the medical malpractice claims for insufficient notice is DENIED.

### C. Statute of Limitations

CCS argues that Hargrow's medical malpractice claims are time barred because Hargrow did not comply with § 29-26-121's notice requirements. CCS does not dispute that the Complaint was filed within the one-year statute of limitations under Tenn. Code Ann. § 29-26-116. (Memo. Mot. Dismiss at 17.) CCS claims that, because the filing was insufficient, it is now time barred. (Id.) That argument is not well-taken.

Hargrow provided adequate notice to CCS. She filed her Complaint on October 3, 2013, within the required period. CCS does not argue that the statute of limitations had run for reasons other than noncompliance with § 29-26-121. Because Hargrow substantially complied with the notice provisions of § 29-26-121 within the period required by law, her Complaint was effective and timely. CCS's Motion to Dismiss Hargrow's malpractice claims based on a failure to comply with § 29-26-121 is DENIED.

### D. Corporate Liability for Medical Malpractice

CCS argues that the Complaint fails to state a medical malpractice claim recognized under Tennessee law. (Memo. Mot. Dismiss at 18.) CCS contends that a corporation cannot be held directly liable for medical negligence. (Id.)

Tennessee does not grant medical licenses to corporations. Tenn. Code Ann. § 63-6-204. However, corporations may be subject to liability under the Tennessee Medical Malpractice Act. Tenn. Code Ann. § 29-26-101(a)(2)(E). Limited liability companies that are health care providers are subject to medical malpractice suits. Id.

CCS is a limited liability company. (Compl. ¶ 4.) CCS provided medical services to the Shelby County Criminal Justice Center. (Id. ¶¶ 12-13.) CCS provided medical treatment to Holmes. (Id. ¶ 13.) Thus, CCS is a health care provider under § 29-26-101(a)(1) and may be sued for medical malpractice. Moore v. Correct Care Solutions, LLC, 2013 WL 1190821, at *6 (Tenn. Ct. App. Mar. 25, 2013). CCS's Motion to Dismiss for failure to state a medical malpractice claim is DENIED.

### E. Wrongful Death Claim

CCS asserts that Hargrow has failed to state a wrongful death claim under Tenn. Code Ann. § 20-5-110 because Hargrow has failed to allege that she is the proper party to bring the action. CCS's argument is well-taken.

"In Tennessee, a wrongful death action may be brought only in the name of the statutorily designated persons." Foster v. Jeffers, 813 S.W.2d 449, 451 (Tenn. Ct. App. 1991). A wrongful death "action may be instituted by the personal representative of the deceased or by the surviving spouse . . . , or, if there is no surviving spouse, by the children of the deceased or by the next of kin . . . ." Tenn. Code Ann. § 20-5-107. "[T]he existence of one of these beneficiaries is a prerequisite to bringing an action for wrongful death." Foster, 813 S.W.2d at 451. The surviving spouse has first priority, followed by children, followed by next of kin. Id. The mere existence of beneficiaries is not enough to maintain a claim: the plaintiff must "plead . . . the existence of requisite beneficiaries before the action can be maintained." Johnson v. Metro. Gov't of Nashville & Davidson Cnty., 665 S.W.2d 717, 718 (Tenn. 1984).

Hargrow has not pled that she is a beneficiary for purposes of a wrongful death suit. The Complaint does not establish that Hargrow is the next of kin or that Holmes had no spouse or children. (See Compl. ¶¶ 1, 40, 42.) Because the Complaint fails to adequately allege standing to bring a wrongful death claim, Johnson, 665 S.W.2d at 718, CCS is entitled to judgment as a matter of law. See Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will

not do.") CCS's Motion to Dismiss the wrongful death claim is GRANTED.

**F. Prejudgment Interest and Punitive Damages**

CCS argues that prejudgment interest is inappropriate because this case involves personal injury. (Memo Mot. Dismiss at 19.) CCS also argues that Hargrow has not alleged facts to support a punitive damages claim. (Memo Mot. Dismiss at 19.) CCS's arguments are not well-taken.

A trial court has the discretion to award prejudgment interest in medical malpractice cases. Hunter v. Ura, 163 S.W.3d 686, 706 (Tenn. 2005). "The uncertainty of either the existence or amount of an obligation does not *mandate* a denial of prejudgment interest, and a trial court's grant of such interest is not automatically an abuse of discretion, provided the decision was otherwise equitable." Myint v. Allstate Ins. Co., 970 S.W.2d 920, 928 (Tenn. 1998)(emphasis in original). Because the Court has discretion to award prejudgment interest, CCS's Motion to Strike is DENIED.

Under Tennessee law, a court may award punitive damages if the plaintiff proves by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly. Isabel v. Velsicol Chem. Co., 327 F.Supp.2d 915, 921 (W.D. Tenn. 2004) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992)). Hargrow alleges "malicious,

18

willful, and wanton deprivation" of Kendrick Holmes' Constitutional right to adequate medical care. (Compl. ¶ 28.) Although the § 1983 claim is dismissed for failing to allege that this deprivation arose from a policy or custom, Hargrow has stated a plausible claim that CCS acted recklessly in its provision of medical care to Holmes. See Isabel, 327 F.Supp.2d at 915. The Court cannot determine, based solely on the pleadings, that Hargrow will be unable to carry the high burden necessary to qualify for punitive damages.

CCS's Motion to strike the claim for punitive damages is DENIED.

**V. Conclusion**

For the foregoing reasons, CCS's Motion to Dismiss is GRANTED IN PART and DENIED IN PART as stated in this Order.

So ordered this 7th day of August, 2014.

                                          s/ Samuel H. Mays, Jr.
                                          SAMUEL H. MAYS, JR.
                                          UNITED STATES DISTRICT JUDGE