# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| Leatha Hargrow, Individually and on behalf of the wrongful death beneficiaries of Kendrick Holmes, Deceased, </br></br>    Plaintiff, </br>v. </br></br>Shelby County, Tennessee; Shelby County Sheriff's Department; and Correct Care Solutions, LLC, </br></br>    Defendants. | No. 13-2770 |

## ORDER GRANTING SHELBY COUNTY'S MOTION TO DISMISS

On October 3, 2013, Plaintiff Leatha Hargrow ("Hargrow") filed a Complaint against Defendants Shelby County, Tennessee ("Shelby County"), Shelby County Sheriff's Department,[1] and Correct Care Solutions, LLC ("CCS"). (Compl., ECF No. 1.) Hargrow is the mother of Kendrick Holmes, who died on October 3, 2012, while in custody at the Shelby County Criminal Justice Center in Memphis, Tennessee. (Id. at ¶ 20.) Defendant CCS is a limited liability company which staffs the medical department of the Shelby County Criminal Justice Center. (Id. at ¶¶ 4,

---

[1] Shelby County Sheriff's Department is not a legal entity separate from Shelby County, Tennessee. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that a police department is not a separate legal "entity which may be sued.").

13.) Hargrow brings suit individually and on behalf of the beneficiaries of her deceased son Kendrick Holmes ("Holmes"), for deprivation of Constitutional rights under 42 U.S.C. § 1983, medical malpractice under Tenn. Code Ann. §§ 29-26-115, et seq., and wrongful death under Tenn. Code Ann. § 20-5-113. (Id. ¶¶ 21-42.)

Before the Court is Shelby County's December 5, 2013 Motion to Dismiss/for Summary Judgment (the "Motion"). (Mot., ECF No. 22-1.) The Court construes the Motion as a motion to dismiss.[2] Hargrow responded on January 2, 2014. (Resp., ECF No. 29.) Shelby County replied on January 16, 2014. (Reply, ECF No. 31.) For the following reasons, the Motion is GRANTED.

I. **Background**

Around September 8, 2012, Holmes was arrested on charges of possessing a controlled substance and drug paraphernalia. (Id. at ¶ 11.) Holmes was incarcerated at the Shelby County Criminal Justice Center (the "Jail"), where he remained until his death on October 3, 2012. (Id. at ¶ 12.) On September 12, 2012, Holmes visited the Jail's medical department, which was staffed

---

[2] The Motion should not be construed as a motion for summary judgment because it was filed before the existence of a record, more than one year before the discovery deadline. (See Sched. Order, ECF No. 25.) To succeed on a motion for summary judgment, Shelby County "must support" its assertion that there is no genuine dispute "by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . showing . . . the absence . . . of a genuine dispute." Fed. R. Civ. Proc. 56(c)(1)(A). See also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Motion is properly considered as a motion to dismiss.

2

by CCS.  (Id. at ¶ 13.)  Holmes purportedly complained of neck pain that had begun two weeks earlier, and a test revealed that he had high blood pressure.  (Id.)  The Jail's medical staff gave Holmes aspirin and anti-hypertensive medication.  (Id. at ¶ 14.)  The staff told Holmes to return to the medical department in two weeks.  (Id.)

Holmes returned on September 26, 2013, complaining that blood was flowing from his ear and that he was unable to breathe through his nose.  (Id. at ¶ 15.)  Medical staff diagnosed Holmes with sinusitis and he was returned to his pod.  (Id.)  On October 3, 2012, around 2:30 A.M., Holmes allegedly began vomiting continuously for several hours.  (Id. at ¶ 16.) According to the Complaint, CCS and Jail records do not indicate whether any CCS or Jail staff evaluated Holmes' symptoms from 2:30 A.M. until a sick call was placed at 6:28 A.M.  (Id.)  At 7:02 A.M., Holmes, unable to walk, was transported by wheelchair to the medical department and seen at 8:14 A.M.  (Id. at ¶ 17.)

Holmes was sweating profusely when he arrived at the medical department, and reported vomiting, blurred vision, dizziness, lightheadedness, and sharp upper-abdomen pain.  (Id. at ¶ 18.)  Instead of being sent to the emergency room, Holmes was returned to his pod at 10:00 A.M.  (Id.)  At about 11:00 A.M., Holmes was found unresponsive in his cell, and a Shelby County Sheriff's employee activated the Mandown Unit.  (Id. at ¶

19.) At 11:45 A.M., Holmes was transported to the Regional Medical Center emergency room, where he was pronounced dead on arrival. (Id. at ¶ 20.)

**II. Jurisdiction**

The Court has federal question jurisdiction over Hargrow's § 1983 claims under 28 U.S.C. § 1331. See 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the remaining claims because they derive from a "common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

**III. Standard of Review**

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

4

Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555). "[D]etailed factual allegations" are not required, but Rule 8 does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 544).

A complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

**IV. Analysis**

Shelby County argues that dismissal is appropriate because (1) Hargrow failed to properly serve Shelby County, (2) the

5

Complaint did not state a claim under § 1983 because it did not specify a Shelby County policy that caused the injury, and (3) Shelby County is entitled to sovereign immunity for Hargrow's state law claims.

**A.   Failure to Serve**

Shelby County moves for dismissal under Federal Rule of Civil Procedure 12(b)(5) for "insufficiency of service of process" because Hargrow did not serve the appropriate Shelby County official. See Fed. R. Civ. P. 12(b)(5). Hargrow asserts that she cured that insufficiency with proper service within the appropriate time.

A plaintiff properly serves "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit by . . . delivering a copy of the summons and of the complaint to its chief executive officer" or by complying with the state's procedure for serving such a defendant. Fed. R. Civ. P. 4(j)(2). Under the Tennessee Rules of Civil Procedure, a plaintiff properly serves a county:

> by delivering a copy of the summons and of the complaint to the chief executive officer of the county, or if absent from the county, to the county attorney if there is one designated; if not, by delivering the copies to the county court clerk.

Tenn. R. Civ. P. 4.04(7). Effective service of process must occur within 120 days of filing the complaint. Fed. R. Civ. P. 4(m).

6

Although Hargrow initially served the secretary for County Attorney Kelly Rayne ("Rayne"), Hargrow served Rayne directly within 120 days of filing the Complaint. (See Summons/Aff. of Serv., ECF No. 28.) The Motion to Dismiss the Complaint for insufficient service is DENIED.

**B.   Failure to State a § 1983 Claim**

Shelby County argues that Hargrow has made only conclusory allegations that Shelby County had policies that caused Holmes' injuries and that Shelby County failed to adequately train the medical personnel who were responsible for treating Holmes. Hargrow argues that her pleadings are sufficient to survive a motion to dismiss because discovery is required to make more detailed allegations.

The Supreme Court has held that a local government may not be held vicariously liable under § 1983 for injuries inflicted by its employees or agents. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). A local government is only liable under § 1983 when a "policy or custom . . . inflicts the injury." Id.

> Accordingly, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under the color of state law, and (3) that a municipality's policy or custom caused that violation to happen.

Bright v. Gallia County, Ohio, 753 F.3d 639, 660 (6th Cir. 2014)(citing Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008)).

Pretrial detainees have a Fourteenth Amendment right to "adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)); Ford v. County of Grand Traverse, 535 F.3d 483, 495 (6th Cir. 2008) (holding that "[p]retrial detainees . . . are guaranteed the equivalent right to adequate medical treatment" as prisoners). See also Graham v. M.S. Connor et al., 490 U.S. 1865, 1870 n.6 (1989) (explaining that Eight Amendment protection does not attach until after conviction and sentence). A claim alleging inadequate care must meets two requirements. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. (citing Wilson v. Seiter, 501 U.S. 294, 299 (1991) (stating that the wanton supply of insufficient medical needs may violate a prisoner's constitutional rights) (dicta). The second requirement is that care providers act with "deliberate indifference" to those medical needs. See id. See also Jackson v. Wilkins, 517 Fed. App'x 311, 317 (2013) (holding that "deliberate indifference to

8

serious medical needs" is a violation of a detainee's Fourteenth Amendment rights).

To allege deliberate indifference adequately, a plaintiff must state facts that show "defendants knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 603 (6th Cir. 2005) (citation omitted).

A plaintiff must plead that the constitutional violation resulted from a policy or custom by identifying:

> (1) The municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence to federal rights violations.

Spears v. Ruth, 589 F.3d 249, 256 (6th Cir. 2009). A mere conclusory allegation that a city employed an unlawful policy or custom, without identifying the policy or stating a pattern of conformance to that custom, is not sufficient. See Iqbal, 129 S. Ct. 1937, 1949 (2009); Huffer v. Bogen, 503 Fed. App'x 455, 462 (6th Cir. 2012) (dismissing a § 1983 claim against a county defendant when the complaint "failed to identify any policy or custom that resulted in a constitutional violation"); Broyles v. Correctional Medical Services, Inc., 2009 WL 3154241, at *2 (6th Cir. 2009) ("[B]are allegations of a custom or policy, unsupported by any evidence, are insufficient to establish

9

entitlement to relief."); accord Rowland v. City of Memphis, et al., 2013 WL 2147457, at *5 (W.D. Tenn., May 15, 2013)("[T]he three allegations in the Amended Complaint that refer to 'policies and procedures' are conclusory.")

To plead a policy of insufficient training adequately, the plaintiff must state facts showing that the municipality knew yet ignored that its training was lacking. Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008). "The easiest way for an individual to meet her burden is to point to past incidents . . . that authorities ignored." Birgs v. City of Memphis, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010). "Only where a failure to train reflects a deliberate or conscious choice by a municipality — a policy as defined by our prior cases — can a municipality be liable for such a failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

To plead adequately that a policy caused an injury, the complaint must plausibly allege that the identified policy "was the moving force behind the deprivation of the plaintiff's rights." Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012); accord Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997).

Although Hargrow has plausibly alleged that Shelby County deprived Holmes of his rights under the Constitution, she has not stated a claim that Holmes' injuries were caused by a County

policy or custom. The Complaint alleges facts that would have put staff and physicians at the Jail on notice of Holmes' objectively serious medical condition. Holmes reported increasingly alarming symptoms during three separate visits to medical staff. (Compl. ¶¶ 13, 15, 18.) Staff could observe Holmes' profuse sweating, and was made aware of his neck pain, high blood pressure, blood flow from the ear, inability to breathe through the nose, blurred vision, dizziness, lightheadedness, and sharp upper-abdomen pain. (Id.) Holmes died within hours of reporting the last of those symptoms.

Hargrow also alleges specific facts supporting her claim that Shelby County acted with deliberate indifference to Holmes' serious medical needs. (See Compl. ¶ 23, 15-17.) That medical staff sent Holmes to his pod rather than providing him additional care hours before his death gives rise to a plausible claim of deliberate indifference.

Shelby County is not vicariously liable for the deprivation of Holmes' rights. Monell, 436 U.S. at 694. Hargrow's § 1983 claim fails because she has not adequately alleged that Shelby County employed a policy or custom causing Holmes' deprivation of rights. Hargrow claims that "Defendants' current practices, policies, and procedures regarding the provision and monitoring of medical care to inmates . . . caused Kendrick Holmes to sustain serious injury and death." (Compl. ¶ 25.) Hargrow does

11

not identify any enactment or specific Shelby County policy or custom of tolerance or acquiescence to federal rights violations. See Spears, 589 F.3d at 256. Her claim that Shelby County policies led to Holmes' deprivation of rights is entirely conclusory because she alleges no facts to support it. See Broyles, 2009 WL 3154241 at *2. Although she alleges that Shelby County failed to train its employees, she offers no facts to show that Shelby County knew yet ignored that its training was lacking. See Carson, 540 F.3d at 457. She points to no past incidents that authorities ignored. See Birgs, 686 F.Supp.2d at 780.

Because she does not allege the existence of a policy or custom adequately, Hargrow's claims that a policy or custom caused Holmes' deprivation of rights are also conclusory. Without adequately pleading the existence of a policy or custom that caused the deprivation of Holmes' constitutional rights, Hargrow fails to state a § 1983 claim for which relief can be granted. The Motion to Dismiss Hargrow's § 1983 claims is GRANTED.

**C. Sovereign Immunity**

Because Hargrow has alleged civil rights violations, Shelby County argues that it is entitled to sovereign immunity under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101, et seq., on Hargrow's state law medical

malpractice and wrongful death claims.  Hargrow argues that, because she has made alternative claims sounding in civil rights and negligence, the TGTLA does not bar her state claims.

The TGTLA provides that Tennessee governmental entities "shall be immune from suit for an injury which may result from the activities of such governmental entities" except as otherwise provided in the statute.  Tenn. Code Ann. § 29-20-201(a).  The statute removes immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of . . . civil rights" violations.  § 29-20-205(2).  The civil rights exception has been construed to include § 1983 claims.  Johnson v. City of Memphis, 617 F.3d 864, 872 (2010).  A negligence claim falls under the civil rights exception where "the same circumstances giv[e] rise to both the negligence and civil rights claims."  Partee v. City of Memphis, Tenn., 449 Fed. App'x 444, 448 (6th Cir. 2011) (alteration in original).

Hargrow states no facts in the Complaint for tort violations other than those underlying her § 1983 claims. Shelby County is immune from suit on Hargrow's medical malpractice and wrongful death claims because they arise from the same circumstances as Hargrow's § 1983 claims.  Partee, 449 Fed. App'x at 448.  Shelby County's Motion to Dismiss Hargrow's medical malpractice and wrongful death claims is GRANTED.

13

**V. Conclusion**

For the foregoing reasons, Shelby County's Motion to Dismiss is GRANTED.

So ordered this 7th day of August, 2014.

                                          s/ Samuel H. Mays, Jr.
                                          SAMUEL H. MAYS, JR.
                                          UNITED STATES DISTRICT JUDGE